IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS, PEORIA DIVISION

| | |
|---|---|
| Todd Bunton, <br> Alex Etcheson, and <br> Jay Etchseon, on behalf of <br> themselves and all others similarly <br> situated, <br> <br> Plaintiffs, <br> <br> v. <br> <br> Cape Code Village LLC, <br> <br> Defendant. | No. 09-CV-1044 |

## REPORT AND RECOMMENDATION

BYRON G. CUDMORE, U.S. MAGISTRATE JUDGE:

This case is before the Court for a Report and Recommendation on Plaintiff's motion to remand this case to state court, on the grounds that the jurisdictional amount for diversity jurisdiction is not satisfied. For the reasons below, the Court recommends that the motion be granted and this case be remanded.

### Facts

Plaintiffs filed this putative class action in Tazewell County Circuit Court on November 21, 2008. Plaintiffs are former apartment

lessees of Defendant, which owns and manages about 228 apartments located in the same complex (38 six-unit buildings).

Plaintiffs allege that Defendant unlawfully withheld their deposits, failed to pay interest on those deposits, and charged them fees not owed. Count I pursues a claim under the Illinois Security Deposit Interest Act, 765 ILCS 715/.01 *et seq*, for Defendant's failure to pay interest on the security deposits. Count II pursues a claim for violations of the Illinois Security Deposit Return Act, 765 ILCS 710.01 *et seq*. Count III pursues an action under the Illinois Consumer Fraud Act, 815 ILCS 505/1 *et seq*, based on Defendant's inclusion in the lease of an illegal provision waiving interest. Lastly, Count IV pursues an action under the Illinois Consumer Fraud Act based on Defendant's: 1) unlawful retention and use of security deposits to pay for ordinary wear and tear; 2) false charges for unnecessary cleaning; and, 3) collection of a nonrefundable fee from new lessees to make the apartment "habitable," while at the same time charging substantial cleaning fees to old lessees (i.e., recovering twice for the same maintenance).

Defendant filed its Notice of Removal on February 5, 2009, a few days after Plaintiffs answered Defendant's requests for admission regarding Plaintiffs' domicile and the amount of damages sought.

## Analysis

Defendant relies on diversity jurisdiction, which requires in relevant part that the dispute be between citizens of different States, and that "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a). The parties are diverse,[1] so the question here is whether the jurisdictional amount is satisfied.

Defendant "has the burden of showing by a preponderance of the evidence facts that suggest the amount-in-controversy requirement is met." Oshana v. Coca-Cola Co., 472 F.3d 506, 511 (7th Cir. 2006). "[A] good faith estimate of the stakes is acceptable if it is plausible and supported by a preponderance of the evidence." Id. at 511. "Once the facts have been established [by a preponderance of the evidence], uncertainty about whether the plaintiff can prove its substantive claim, and whether damages (if the plaintiff prevails on the merits) will exceed the threshold, does not justify dismissal." Meridian Security Ins. Co. v. Sadowski, 441 F.3d 536,

---

[1] Defendant, as an LLC, is a citizen of every state in which any member is a citizen. See Belleville Catering Co. v. Champaign Market place, L.L.C., 350 F.3d 691, 693 (7th Cir. 2003). Defendant alleges that its only member is a Missouri corporation ("James Stewart Properties, Inc."), with its principal place of business in Missouri. (Notice of Removal, d/e 1, para. 9). Thus, Defendant is considered a citizen of Missouri. Defendants also allege, and Plaintiffs do not dispute, that Plaintiffs are not domiciled in Missouri. (Notice of Removal, d/e 1, para. 10).

541, 543 (7th Cir. 2006)(discussing various methods for showing amount in controversy, including contentions interrogatories and admissions). That is, once the defendants have met their burden, jurisdiction is "defeat[ed] . . .only if 'it appears to a legal certainty that the claim is really for less than the jurisdictional amount.'" Oshana, 472 F.3d at 511. In a class action, aggregating of the plaintiffs' claims is not permitted to determine the jurisdictional amount. Oshana, 472 F.3d at 511. Instead, at least one named plaintiff must individually meet the jurisdictional amount.

Defendant's notice of removal is premised on Plaintiffs' answers to Defendant's requests to admit. Specifically, Defendant asked Plaintiff to admit the following:

> Admit that, . . . You will not individually seek: (I) an award of punitive damages in excess of $75,000; (ii) an award of compensatory damages in excess of $75,000; and (iii) an award of attorneys' fees in excess of $75,000; or (iv) an award of any combination of compensatory and punitive damages and attorneys' fees in excess of $75,000. (Notice of Removal, d/e 1, Ex. D).

Plaintiffs answered:

Deny. Depending on the course of this litigation, it is possible that attorney's fees could eventually exceed $75,000." (Notice of Removal, d/e 1, Ex. D).

Defendant points out that a similar denial in <u>Oshana v. Coca-Cola Company</u>, 472 F.3d 506, 512 (7th Cir. 2007) supported removal by raising an inference that the plaintiff sought more than $75,000.00. In <u>Oshana</u>, the plaintiff pursued a class action against Coca-Cola based on the Illinois Consumer Fraud Act and unjust enrichment, alleging that Coca-Cola duped their customers by not revealing that fountain Diet Coke contains both saccharin and aspartame, rather than just aspartame. The plaintiff in <u>Oshana</u> filed in state court, specifically disclaiming individual damages over $75,000.00 in her complaint. However, the plaintiff refused to admit, in response to requests, that she would not seek a "combined award of disgorgement, attorneys' fees, and punitive damages over $75,000." 472 F.3d 506. The District Court in <u>Oshana</u> denied the plaintiff's motion to remand, refused to certify the class, and eventually held that the plaintiff was entitled to recover only $650. The plaintiff then settled for $650 plus attorney's fees and costs.

On appeal, the Seventh Circuit in <u>Oshana</u> upheld the District Court's exercise of jurisdiction. The Court of Appeals reasoned that the plaintiff's disclaimer in her complaint was not binding[2]; her refusal to admit had

---

[2] "If Oshana really wanted to prevent removal, she should have stipulated to damages not exceeding the $75,000 jurisdictional limit." 472 F.3d at 511.

"worked against her" by raising an inference that her recovery would exceed $75,000; the plaintiff had sought disgorgement of all of Coca-Cola's profits (some of which could have been recoverable by her individually); punitive damages were available (though not sought by the plaintiff); and attorney's fees up to the point of removal could also be counted. 472 F.3d at 512.

Plaintiffs counter that their response to the requests for admissions is different from the response in Oshana. Here, Plaintiffs qualified their denial with the statement that, "depending on the course of this litigation, it is possible that attorney's fees could eventually exceed $75,000." Since only attorneys' fees incurred at the time of removal can be considered for the jurisdictional amount, Oshana, 472 F.3d at 512, Plaintiffs contend that all that they have admitted is that their attorney's fees may eventually exceed $75,000, not that the amount in controversy for removal purposes exceeds $75,000. Plaintiffs state in their response that, "if defendant had propounded a request to admit solely about each plaintiff's actual and punitive damages, plaintiff would have admitted it, but defendant did not do so." (d/e 9, p. 6).

In the Court's opinion, both the requests for admissions and the responses are arguably ambiguous, from the perspective of determining whether the jurisdictional amount is satisfied. Defendant's requests do track the request in Oshana, which was used successfully for removal (along with other factors). However, notwithstanding Oshana, Defendant's requests do not limit attorney's fees to those incurred to date; thus, as Plaintiff points out, their denial does not necessarily mean that they seek more than the jurisdictional amount, particularly in light of their qualification. On the other hand, Plaintiffs could have been clearer and more thorough in their response. Plaintiffs' response does not necessarily mean that they seek less than the jurisdictional amount either, though now they seem to say that is what they meant. (d/e 9, p. 6); *but see* In re Shell Oil Co., 970 F.2d 355 (7th Cir. 1992)(postremoval statements do not defeat jurisdictional amount; "Litigants who want to prevent removal must file a binding stipulation or affidavit with their complaints.").

Because of these ambiguities, the Court does not believe that Plaintiffs' response to the requests to admit is an admission that the jurisdictional amount is satisfied. In any event, the Court would still have to makes its own determination, even if the parties agreed that the

jurisdictional amount was satisfied.  Smith v. American General Life and Accident Ins. Co., Inc., 337 F.3d 888, 893 (7th Cir. 2003).

It appears from the Complaint that none of the named Plaintiffs can recover more than $3,000 in total statutory and compensatory damages. Take Plaintiff Bunton, for example, who appears to have lost the most out-of-pocket.  Bunton's deposits to Defendant totaled $450 ($100 security deposit + $300 pet deposit +$50 key deposit), all wrongfully withheld. (Complaint, ¶ 7-9).  Defendant also wrongfully required Bunton to pay $499 to make the apartment "habitable" before Bunton moved in.  Lastly, Defendant charged Bunton an additional $793.88 in wrongful charges after Bunton moved out and failed to pay interest on the deposits, which the court estimates at $22.50.[3][4]  (Complaint ¶ 20).  Adding these amounts, the total out-of-pocket loss to Bunton equals $1,765.38.  Add in another $900

---

[3] The Complaint alleges $893.88 in wrongful charges on move-out, but the itemized statement attached the Complaint (Exhibit B) shows total move-out charges of $1,243.88 ($913.88 carpet replacement plus $245 "full clean" plus $85 for paint and stove pans).  The $450 in deposits was applied to this amount, leaving $793.88 in wrongful charges.  Plaintiffs assert in their reply that they do not dispute the carpet replacement charges (d/e 9, p.3), but that assertion was not part of the Complaint and is therefore not considered in the removal analysis.

[4] Bunton asserts that he is entitled to $5 for his actual damages in Count III, which apparently represents "interest calculated to be 5% of the security deposit" of $100. The Court does not understand why Plaintiff did not include interest on the pet and key deposit. $22.50 is 5% of $450.

to represent the double recovery of the security deposit in Count II[5], and the total actual and statutory damages amounts to $2,665.38 for Burton, no matter how the amounts are divided up among the separate counts.[6]

Attorney's fees can be counted up to the point of removal, which amount here to $18,166.00. (d/e 3, p. 7and Exs. A & B). The parties do not address the question, but the Court believes that only half of that is fairly attributable to Bunton for purposes of this analysis—$9,083.[7] *See* 15 James Wm. Moore, *Moore's Fed. Prac.* § 102.106(6)(a) n. 47 (3d ed. 2003). That brings the amount in controversy to $11,748.38, as to Bunton, for his share of the attorneys fees and his damages (other than punitive damages) for all counts combined.

---

[5]It is not entirely clear if Bunton could recover an additional $900 under Count II, if he already recovered the security deposit once in Count I, but the difference would not change the Court's recommendation.

[6]Bunton asserts that his actual and statutory damages amount to $2,328.88 (d/e 3, p. 7), but the Court disagrees with the method used to arrive at that figure. For example, Burton does not explain why the "security deposit" in Count I is $450, but only $100 in Count II (i.e., why are the key and pet deposits not part of the "security deposit"?). Similarly, Bunton does not explain why the interest in Count III is calculated on $100 rather than $450 (all the deposits added together). Bunton also does not adequately explain how his Count IV fraud claim is limited to $430. In any event, the difference in the Court's estimate ($2,688.38) and Bunton's estimate ($2,328.88) is only $359.50 and does not change this Court's recommendation.

[7]Defendant asserts that Attorney Berstein's fees were not included, but Plaintiff confirms that Mr. Bernstein had no legal fees at the time of removal. (d/e 9, p.2).

That leaves the punitive damages sought in the fraud Counts III and IV to make up the more than $63,251.62 needed to meet the jurisdictional amount. An award of over $63,000 in punitive damages to Bunton would amount to about 36 times his actual damages of $1,765.38 in Counts III and IV.[8]

Plaintiffs argue that punitive damage awards "generally cannot exceed ten times actual damages", citing State Farm Mutual Auto Ins. Co. v. Campbell, 538 U.S. 408 (2003). Defendant counters that Plaintiffs cannot show to a legal certainty that sufficient punitive damages cannot be awarded.

Defendant also argues that its cost of complying with injunctive relief must be considered, and that it will lose over $58,000 per year if it cannot collect interest and "habitable" fees for each unit. Plaintiffs are correct, however, that Defendant cannot aggregate its costs of complying with an injunction, just like Plaintiffs cannot aggregate their damages. Uhl v. Thoroughbred Technology and Telecommunications, 309 F.3d 978 (7th Cir. 2002) (court must "look[] separately at each named plaintiff's claim and the

---

[8] It seems to the Court that Bunton's actual damages in Counts III and IV would total his out-of-pocket loss $1,765.38 because those counts are based on the amounts Defendant fraudulently withheld and charged (the deposits, the interest, and the move-out charges).

costs to the defendant of complying with an injunction directed to that plaintiff").

Thus, whether the jurisdictional amount is satisfied hinges on the amount of punitive damages recoverable. "[W]hen a federal court is convinced to a legal certainty that punitive damages that form a necessary component of the amount-in-controversy requirement cannot be obtained, the court must dismiss the case for want of jurisdiction." Smith v. American General Life and Accident Ins. Co., 337 F.3d 888, 894 (7th Cir. 2003) (jurisdictional amount not satisfied where plaintiff claims against insurance company amounted to $2,536.54; plaintiff's claim for $1 million in punitive damages was unrealistic, and parties had not shown that an Illinois court might have awarded her $72,500 in punitive damages); Del Vecchio v. Conseco, Inc., 230 F.3d 974 (7th Cir. 2000)(jurisdictional amount not satisfied where plaintiff sought compensatory damages of $650 in putative class action against insurer for fraud).

Punitive damages are available under the Illinois Consumer Fraud Act. Allen v. Woodfield Chevrolet, Inc., 208 Ill.2d 12, 17 (2003); 815 ILCS 505/10a(a). Neither side sets forth the best benchmark--cases similar to this in which punitive damages were awarded. See International Union of

Operating Engineers v. Lowe Excavating Co., 225 Ill.2d 456, 487 (2007)("In our estimation, the best way to determine whether a given ratio is appropriate is to compare it to punitive damages awards in other, similar cases.")(reducing punitive damages to 11 to 1 ratio for Union's misconduct).  Defendant cites only Sharp Electronics Corp. v. Copy Plus, Inc., 939 F.2d 513, 514 (7th Cir. 1991), which easily met the single digit ratio because $15,000 in compensatory damages were sought and the jurisdictional amount at the time was $50,000.

However, Oshana did arguably involve small sums, and this Court also found Gavin v. AT&T Corp., 464 F.3d 634 (7th Cir. 2006), in which the Seventh Circuit indicated that a higher ratio of punitive damages might be justified where compensatory damages are small.  In Gavin, a shareholder sued in state court, alleging fraud based certain omissions in a letter.  The defendants removed, contending that the claim fell within the federal Securities Litigation Uniform Standards Act.  The Seventh Circuit disagreed and remanded the case, but not before remarking that Defendants would have succeeded in establishing diversity jurisdiction if they had made the argument.  Even though the plaintiff in Gavin had alleged compensatory damages of only $1,645.00, the Court noted that "a higher multiple is

permissible when the expected award of compensatory damages is so small that it would be unlikely to induce a suit even of compelling legal merit, especially if there are multiple victims and an indication that the tortfeasor has been eluding liability successfully."  464 F.3d at 641, *citing* Mathias v. Accor Economy Lodging, Inc., 347 F.3d 672 (7th Cir. 2003)(upholding punitive damage ratio of 37.2 to 1: compensatory damages of $5,000, punitive damages of $186,000)(failure of hotel to eradicate bedbugs).  The Seventh Circuit in Gavin stated that "one could not say as a matter of law that the plaintiff would be unable to cross the threshold . . . ."  Id.  The Court remarked that:

> The proper focus of analysis of the ratio itself is the adequacy of the combined award of compensatory and punitive damages to motivate the prosecution of a meritorious claim.  If compensatory damages are slight, a single-digit ratio is likely to be insufficient.

Id.; *see also* International Union of Operating Engineers v. Lowe Excavating Company, 225 Ill.2d 456, 489-90 (S.Ct. Ill. 2007)(compensatory damages might not "'do the trick'" where damages "too slight to give victim incentive to sue")(*quoting* Mathias v. Accor Economy Lodging, Inc., 347 F.3d 672, 677 (7th Cir. 2003); Kirkpatrick v. Strosberg, 385 Ill.App.3d 119, 135-136 (2d Dist. 2008)(upholding punitive damage award of $300,000

where only nominal damages awarded for Fraud Act Claim, but court considered $83,000 in attorney fees that were awarded).[9]

However, there are constitutional limits on punitive damage awards. State Farm Mutual Automobile Ins. Co. v. Campbell, 538 U.S. 408, 416 (2003)($145 million punitive damages award was excessive for purely economic harm where $1 million in compensatory damages awarded). "To the extent an award is grossly excessive, it furthers no legitimate purpose and constitutes an arbitrary deprivation of property." Id. at 417. The guideposts are "(1) the reprehensibility of the defendant's conduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases." Id. at 418. There is no "bright line ratio," but "in practice, few awards exceeding a single-digit ratio between punitive and compensatory damages , to a significant degree, will satisfy due process."

---

[9]The Court in Kirkpatrick included the attorneys' fees when determining the ratio. International Union of Operating Engineers v. Lowe Excavating Company, 225 Ill.2d 456, 459 (2007)("we are permitted to take into account the amount of the attorney fees expended in a case when assessing a punitive damages award."). Considering attorney's fees does not necessarily mean a higher ratio is warranted, however. Id. at 490-91 (reducing punitive damages to 11 to 1 ratio for Union's misconduct). Defendant does not argue that the attorney's fees incurred to date should be considered when assessing punitive damages for removal purposes, nor has the Court found any case supporting that conclusion.

Id. at 424.  Higher ratios might be warranted if "'a particularly egregious act has resulted in only a small amount of economic damages.'"  Id. at 425, *quoting* BMW of North America, Inc. v. Gore, 517 U.S. 559, 581 (1996) (reversing $2 million in punitive damages where $4,000 in compensatory damages awarded).

After careful consideration, the Court concludes that Defendant has not established the jurisdictional amount.  Plaintiffs stand to recover less than $3,000 individually in damages (excluding punitive damages), and their harm was purely economic.  Defendant has made no effort to establish that punitive damages of over $63,000 might realistically be recovered.  As discussed above, Defendant cites only Sharp Electronics Corp. v. Copy Plus, Inc., 939 F.2d 513, 514 (7th Cir. 1991), which easily met the single digit ratio.  "[P]ointing to the theoretical availability of certain categories of damages . . . is not enough."  American Bankers Life Assurance Co. of Florida v. Evans, 319 F.3d 907, 909 (7th Cir. 2003) ($75,000 (arbitration jurisdiction) not satisfied where plaintiff sought $118.05 in compensatory damages in purported class action under Consumer Fraud Act).

Further, the Court does not see that such a large recovery would be allowed or would survive constitutional scrutiny. Oshana did seem to involve small sums, but it is distinguishable because "disgorgement" was sought there to the tune of millions of dollars. Though millions in recovery was unrealistic, the Oshana Court did remark that some disgorgement amounts might be possible. As for Gavin, those statements can be construed as dicta and involved a different fact scenario. In short, the Court does not believe that, on this record, the punitive damages recoverable in Counts III and IV could legally amount to more than $63,000 for an individual plaintiff. *See, e.g.,* American Bankers Life Assurance Co. of Florida v. Evans, 319 F.3d at 909 (amount not satisfied where plaintiff sought $118.05 in compensatory damages in purported class action under Consumer Fraud Act); State Farm Fire and Casualty Co. v. U.S. Liability Ins. Co., 2009 WL 127422 (S.D. Ill. 2009)(jurisdictional amount not satisfied where plaintiff sought $8,400 in compensatory damages and punitive damages would have to total more than $66,000)(not reported in F.Supp.2d); Gehrett v. Chrysler Corp., 379 Ill.App. 3d 162, 184 (2d Dist. 2008)(reducing punitive damages to 7:1 ratio; action based partly on Consumer Fraud Act and defendant's conduct, harm was economic, and

defendant's conduct, though reprehensible, was not "heinous or shocking to the conscience."). Accordingly, the Court concludes that subject matter jurisdiction is lacking and this case should be remanded to state court.

However, the Court does not believe that an award of costs and fees to Plaintiffs under 28 U.S.C. § 1447(c) is warranted, because Defendant had an "objectively reasonable basis for removal" based on Oshana and Plaintiffs' responses to Defendant's requests to admit.

WHEREFORE, the Court RECOMMENDS that Plaintiffs' Motion for Remand (d/e 2) be GRANTED and this case be remanded to the Tazewell County Circuit Court. The Court further RECOMMENDS that Plaintiffs' requests for fees and costs under 28 U.S.C. § 1447(c) be DENIED.

The parties are advised that any objection to this Report and Recommendation must be filed in writing with the Clerk of the Court within ten working days after being served with a copy of this Report and Recommendation. See 28 U.S.C. § 636(b)(1). Failure to file a timely objection will constitute a waiver of objections on appeal. See Video Views,

Inc. v. Studio 21, Ltd., 797 F.2d 538, 539 (7th Cir. 1986).  See Local Rule 72.2.

ENTER: May 21, 2009

*s/ Byron G. Cudmore*

_____
BYRON G. CUDMORE
UNITED STATES MAGISTRATE JUDGE